**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| Paradise IP LLC, <br><br> Plaintiff, <br><br> v. <br><br> J2 Global Inc., <br><br> Defendant. | Civil Action No. 6:20-CV-999-ADA <br><br> Patent Case <br><br> **Jury Trial Requested** |


**DEFENDANT J2 GLOBAL INC.'S REPLY IN SUPPORT OF ITS MOTION TO
DISMISS THE FIRST AMENDED COMPLAINT**

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | ARGUMENT | 1 |
| | A. Paradise Concedes It Has Not Adequately Pleaded Indirect Infringement. | 1 |
| | B. Paradise Fails to Adequately Plead Divided Infringement, Leaving Only J2 Global Employee Testing Allegations With Regard to Direct Infringement. | 2 |
| |     1. Paradise's Claims for Divided Infringement by J2 Global and SugarSync Customers Should Be Dismissed with Prejudice. | 2 |
| | C. The Asserted Claims of the '627, '613, and '741 Patents Are Ineligible Under Section 101 | 4 |
| |     1. *Alice* Step 1: '627, '613, and '741 Patent Claims are both abstract and impermissibly exclusionary. | 4 |
| |     2. *Alice* Step 2: '627, '613, and '741 Patent Claims are not inventive | 6 |
| III. | CONCLUSION | 9 |

## I. INTRODUCTION

Paradise's Opposition concedes that the Amended Complaint does not allege indirect infringement and confirms that the allegations in the Amended Complaint are devoid of any allegations that could support a claim of divided infringement. In a single bullet point in its Opposition, Paradise purports to address its deficient divided infringement allegations by summarily directing the Court and J2 Global to review *seventy pages* of claim charts and divine for themselves the missing factual allegations that could support Paradise's alleged claim. Under controlling caselaw and the decision of this Court in *De La Vega v. Google LLC*, J2 Global's motion should be granted as to any claim of infringement beyond J2's alleged internal employee testing.

Paradise's Opposition fares no better as to why each of the three remaining patents are not invalid under 35 U.S.C. § 101. Paradise argues J2 Global has overly abstracted the asserted claims, and that "factual disputes" exist that preclude dismissal under Section 101. Paradise's first argument fails because by its own admissions in its Opposition, the abstract concepts laid out by J2 Global are correct. Indeed, Paradise's silence is notable—its section dedicated to *Alice* Step One includes no explanation of the claims or the concepts of the claims, and Paradise's "Background" descriptions of the patents do not address the abstract concepts identified by J2 Global. Paradise's second argument fails as there simply are no real factual disputes to resolve for this Motion. And Paradise's decision to not even address J2's pre-emption argument demonstrates the weakness of its position.

## II. ARGUMENT

### A. Paradise Concedes It Has Not Adequately Pleaded Indirect Infringement.

Paradise's Opposition concedes that Paradise has not adequately pleaded claims for indirect infringement. Opp., § 4.3. Therefore, J2 Global's motion should be granted as to

indirect infringement.

> **B.  Paradise Fails to Adequately Plead Divided Infringement, Leaving Only J2 Global Employee Testing Allegations With Regard to Direct Infringement.**

In its Opposition, Paradise does not attempt to address several issues J2 Global raised in its Motion to Dismiss, including that Paradise's allegations of infringement based on alleged sales, offers to sell products, and importing products fail as a matter of law because the sale, offer of sale, or importing of a product cannot constitute direct infringement of method claims. Mot. § III.A.1.  The Court should grant J2 Global's Motion with respect to these unaddressed deficiencies.

Paradise instead states only that "[t]he pleadings and claim charts provide two avenues for direct infringement."  Opp., § 4.2.  The first is "J2's internal employee testing of the product."  *Id.*  The second is a divided direct infringement theory, which J2 Global covers in the next section *infra*.

In other words, Paradise argues only that its Amended Complaint makes a claim for (1) direct infringement by J2 Global's internal employee testing of the accused product, and (2) alleged divided direct infringement.  J2 Global is not challenging the adequacy of the pleadings with respect to (1).  But with respect to (2), as explained below, Paradise's Complaint does not actually contain divided direct infringement allegations, let alone allege the facts necessary to support such a claim.  Thus, all theories of direct infringement beyond internal testing by J2 Global should be dismissed.

> **1.  Paradise's Claims for Divided Infringement by J2 Global and SugarSync Customers Should Be Dismissed with Prejudice.**

Divided infringement requires pleading either that the defendant "directs or controls others' performance," or that the "actors form a joint enterprise."  *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) (in which the Federal Circuit *en*

*banc* set the standard for determining divided infringement). In determining whether a single entity directs or controls the acts of another, "an actor is liable for infringement under § 271(a) if [(1)] it acts through an agent (applying traditional agency principles) . . . [(2)] contracts with another to perform one or more steps of a claimed method . . . [or (3)] conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method and establishes the manner or timing of that performance." *Id.* Alternatively, a "joint enterprise requires proof of four elements: (1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose, among the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control." *Id.*

Paradise's Amended Complaint does not contain a divided infringement claim, as Paradise makes no allegations of J2 Global ***directing or controlling*** SugarSync customers, or of J2 Global and SugarSync customers acting as a joint enterprise as required under controlling caselaw. *See Akamai*, 797 F.3d at 1022.

In Paradise's Opposition (which devotes only a single bullet point to the issue), Paradise argues it has adequately pleaded a claim of divided infringement by summarily directing the Court and J2 Global to three separate exhibits containing ***seventy pages*** of claim charts. Opp. § 4.2. However, even a brief examination of Paradise's Amended Complaint, including the cited three exhibits, reveals that divided infringement is never pleaded or even suggested across both the Amended Complaint and its claim charts. In fact, not only does Paradise fail to allege that J2 Global directed or controlled customers, or entered into a joint enterprise with them, but the words "customer," "users," and their similes/analogs ***do not even appear in the entirety of the Amended Complaint and its claim charts with regards to any actions any customers or users***

*were required to take*.

Paradise's wholly deficient pleading, which it makes almost no effort to defend, is a far cry from what is required under controlling caselaw for a divided direct infringement claim. *See* § II.B.I *supra* (detailing the three possible theories for divided direct infringement under *Akamai*, none of which Paradise pleads or even addresses). Accordingly, because Paradise has failed to plead divided direct infringement, to the extent Paradise's claims of direct infringement are premised on divided infringement by J2 Global and SugarSync customers (who are not named as defendants), the claims should be dismissed with prejudice. Furthermore, allowing a Plaintiff to conjure out of thin air new allegations of infringement entirely absent from a complaint (as is the case here) will only encourage gamesmanship and does not comport with pleadings standards of this Court.

This Court has dealt with similar circumstances recently, and granted a motion to dismiss where the plaintiff failed to sufficiently plead or allege elements required for divided infringement, including direction or control of an unnamed third party. *See De La Vega v. Google LLC*, 6-19-cv-00617 (W.D. Tex. Feb. 11, 2020) ("The Complaint fails to make even conclusory allegations of such direction, control, or joint enterprise, much less allege any facts in support of the same."). Akin to *De La Vega*, J2 Global respectfully requests that the Court grant J2 Global's Motion to Dismiss.

### C. The Asserted Claims of the '627, '613, and '741 Patents Are Ineligible Under Section 101.

#### 1. *Alice* Step 1: '627, '613, and '741 Patent Claims are both abstract and impermissibly exclusionary.

The asserted claims of the '627, '613, and '741 Patents are invalid because the claims are drawn to the abstract ideas of responding to a change by taking an action, using a database to keep records where collecting records may be performed via data transfer between devices, and

collecting, analyzing, and storing data, respectively.  Mot., §§ III.B, III.C, III.D.

Notably, Paradise does not raise any argument that claim construction is required for any term prior to a Section 101 determination being made.  Instead, Paradise asserts that J2 Global strips "all limiting detail and inventive concepts," summarizing J2 Global's argument for the '627 Patent as "taking an action in response to change or new input," the '613 Patent as "using a database for asset management," and the '741 Patent as "collecting and analyzing data."  Opp., § 5.1.1.

Instead, ironically, Paradise commits the exact thing—it accuses J2 Global of doing—namely, "overgeneralizing claims . . . carried to its extreme," stripping text of all detail and concepts and reducing them to, in this case, 10, 6, and 4 words, respectively.  Opp., § 5.1.1.  Paradise's Opposition ignores paragraphs of textual analysis J2 Global provided in its Motion.  For example, regarding the '627 Patent, Paradise disregards J2 Global's discussion of "software systems [that] could respond to problems (change) by modifying software configuration while running . . . and other advances [] admitted in the '627 Patent's background section," and textual comparison and analysis of the '627 Patent's amorphous "storage locations," "associated attribute value," and actions.  Mot. § III.B.1.  *See also*, § III.B.2–4, III.C.1–4, and § III.D.1–4.

Indeed, Paradise's Opposition's section on *Alice* Step 1 contains no analysis of any of the claims (or any other part of the patents).  Paradise states only that "a court must consider claims in light of the specification and find an abstract idea only when their character as a whole is directed to excluded subject matter," and that "when understood this way, none of the claims are abstract."  Opp. § 5.1.1 (referencing Opp. § 3's discussion).  These generic statements contain no substantive discussion or analysis of any of the claims of the asserted patents, and simply saying the claims are not abstract does not make it so.

-5-

Finally, Paradise does not even attempt to address J2 Global's argument that the '627, '613, and '741 Patents offend § 101 of the Patent Act because of its exclusionary and preemptive nature. *See, e.g.,* Mot. § III.B.1 ("Indeed, claim 27 purports to cover any software program or method that associates a plurality of *any* actions to two or more storage locations and makes a decision about which action to take, *regardless of whether it has anything to do with building dynamic software*. In fact, claim 27 is so abstract that Plaintiff alleges it can read on cloud storage and software that synchronizes files across entirely different devices, even though the '627 Patent does not even mention, much less disclose, anything regarding file synchronization across different devices."); *see also* Mot., § III.C.1 and Mot., § III.D.1 (for similar arguments regarding the other two patents).

In short, Paradise fails to offer any substantive response to J2 Global's Motion with regard to Alice Step 1.

### 2. *Alice* Step 2: '627, '613, and '741 Patent Claims are not inventive.

J2 Global raised in its Motion that the elements of the asserted claims, when considered individually or as an ordered combination, exhibit no inventive concept. Mot., § III.B.2, § III.C.2, and § III.D.2. Paradise purports to address Step 2 of the analysis in Sections 5.1.1 and 5.2.2 of its Opposition.

In Section 5.1.1 of Paradise's Opposition, Paradise cites *Berkheimer* for the proposition that "inventive feature[s] . . . to the extent they are captured in the claims, create a factual dispute regarding whether the invention describes well-understood, routine, and conventional activities." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018). Accordingly, Paradise appears to contend that dismissal is improper because "the claims of each patent embody inventive concepts," and presumably a factual dispute exists. Opp., § 5.2.2.

But Paradise never explains *where* inventive concepts are captured in the claims, and

Paradise cannot manufacture a "factual dispute" about the claims when it cannot coherently describe what or where the dispute is. In its Opposition, Paradise purports to summarize all of the claims at once in each patent, without reference to any actual claim language or any particular claim, and broadly argues that the specification supports its brief characterization of all of the claims. For example, as to the '613 Patent, Paradise opines, without reference to any particular claim or claim language, that "the claims address the problem of managing assets, including those that lack network communication capabilities with an unconventional solution. The implementation of this technique is technically described in the specification." Opp., § 5.2.1. *See, also*, *id.* (Paradise's discussion of the '627 and '741 patents, which also fail to show where inventive concepts are captured in the claims as required by *Berkheimer*). Paradise fails to cite, demonstrate, or show where in the claims the inventive concept is captured. Paradise does not analyze claim language, discuss existing understandings of POSITA, or otherwise demonstrate why its solution is "unconventional" or "inventive." Paradise simply says a factual dispute exists without identifying one.

In short, even though J2 Global pointed out the conclusory and boilerplate nature of the Amended Complaint, Mot., § III.B.4, § III.C.4, and § III.D.3, Paradise's only response has been to state that "all non-conclusory allegations . . . must be accepted as true at the pleadings stage." Opp., § 5.2.1. But citing legal truisms alone cannot save Paradise's claim. Paradise's generic arguments are not the "non-conclusory allegations" contemplated by the caselaw it cites, and the case should be dismissed under § 101.

The remainder of Paradise's Step 2 discussion, in Section 5.2.2, is comprised of sweeping, conclusory statements that are not specific to any of the patents in the case (indeed, none of the patents are actually mentioned or cited) and various misstatements of caselaw. For

example, Paradise argues that "the claim charts, incorporated in the complaint, provides 'concrete allegations . . . that individual elements and the claimed combination are not well-understood, routine, or conventional activity.' *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018)." Opp., § 5.2.2. *Aatrix Software* does not support the proposition that Paradise's claim charts provide concrete allegations.

*Aatrix Software*, however, does reiterate the second step of the *Alice* test, stating that "[i]f the elements involve well-understood, routine, [and] conventional activity previously engaged in by researchers in the field, they do not constitute an 'inventive concept.' We have explained that the second step of the *Alice / Mayo* test is satisfied when the claim limitations 'involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'" *Aatrix Software*, 882 F.3d at 1128 (internal quotations omitted). Similarly, J2 Global has explained how Paradise's patents not only involve the "well-understood, routine, [and] conventional activity" not only engaged by researchers in the field, but in some cases, by laypeople. Paradise does not refute these arguments beyond overly reducing J2 Global's arguments to strawmen that it then attempts to knock down.

Finally, this matter can be distinguished from *Cellspin*, Paradise's final citation, because across multiple filings, Paradise has not identified or quoted the claim or specification language that recites "what makes the claims inventive." *Cellspin Soft, Inc. v. Fitbit, Inc.*, 2019 U.S. App. LEXIS 18853, 18876 (Fed. Cir. 2019) ("As long as what makes the claims inventive is recited by the claims, the specification need not expressly list all the reasons why this claimed structure is unconventional."). Paradise similarly fails to quote or otherwise identify specification language, saying that the specifications describe unconventionality "explicitly" or "implicitly." Opp., § 5.2.2. In fact, every mention of a specification or claim being "unconventional" or "inventive"

comes from Paradise describing it to be so, rather than from claims or specification language.

### III. CONCLUSION

For the reasons stated above, Defendant J2 Global respectfully requests that the Court dismiss the Amended Complaint with prejudice.

Respectfully submitted,

Dated: February 11, 2021

*/s/ Deron Dacus*
Deron R. Dacus
Texas Bar No. 00790553
THE DACUS FIRM, P.C.
821 ESE Loop 323, Suite 430
Tyler, Texas 75701
903-705-1117 (phone)
903-581-2543 (fax)
E-mail: ddacus@dacusfirm.com

Harper Batts
Calif. Bar No. 242603 (*pro hac vice* pending)
Chris Ponder
Texas Bar No. 24065916 (*pro hac vice* pending)
Jeffrey Liang
Calif. Bar No. 281429 (*pro hac vice* pending)
SHEPPARD MULLIN
379 Lytton Ave.
Palo Alto, CA 94301
650-815-2673 (phone)
650-815-2601 (fax)
E-mail: hbatts@sheppardmullin.com
E-mail: cponder@sheppardmullin.com
E-mail: jliang@sheppardmullin.com

*Counsel for Defendant J2 Global, Inc.*

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on February 11, 2021, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system.

*/s/ Deron Dacus*
Deron Dacus
